**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>        MADISON WILLIAMS AND CO., LLC.<br><br>                              Debtor.<br>――――――――――――――――――――<br>Gregory Messer, as Chapter 7 Trustee,<br><br>                              Plaintiff,<br><br>                    *v.*<br><br>TX Onshore, LLC,<br><br>                              Defendant. | **FOR PUBLICATION**<br><br>Case No. 11-15896 (MG)<br>Chapter 7<br><br><br><br><br>Adv. Proc. No. 13-01807 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART TX ONSHORE'S MOTION TO DISMISS**

*A P P E A R A N C E S:*

CARTER LEDYARD & MILBURN LLP
*Attorneys for TX Onshore, LLC*
2 Wall Street
New York, New York 10005
By:    Aaron R. Cahn, Esq.

LAMONICA HERBST & MANISCALCO, LLP
*Attorneys for Gregory Messer, Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11793
By:    Nicholas C. Rigano, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is TX Onshore, LLC's ("TXON" or the "Defendant") motion to dismiss

(the "Motion," ECF Doc. # 9) the adversary proceeding filed by Gregory Messer, as chapter 7

trustee (the "Trustee" or the "Plaintiff") of the estate of Madison Williams and Co., LLC

("Madison Williams" or the "Debtor"). The Trustee filed an opposition to TXON's Motion (the

"Opposition," ECF Doc. # 12), and TXON filed a reply (the "Reply," ECF Doc. # 13).

The Debtor and TXON (the "Parties") were parties to a written contract (the "Contract,"

Motion Ex. A) entered into on May 6, 2010, for a one-year term, followed by a one-year tail

period. TXON engaged Madison Williams, a former broker-dealer and financial advisor, to act

as TXON's exclusive financial adviser in its quest to raise additional equity or debt in one or

more transactions. TXON agreed to compensate Madison Williams for any transaction that fell

within the terms of the contract and that closed within the one-year contract period, or during the

one-year tail period. In other words, absent an extension of the Contract, the tail period would

expire on May 6, 2012. On May 9, 2012, TXON allegedly closed a financing transaction that

would have required TXON to pay Madison Williams at least $500,000 under the Contract *if* the

Contract or the tail period was still in force. Madison Williams shut its business and filed a

petition under chapter 7 of the Bankruptcy Code on December 29, 2011.

While the Amended Complaint (the "Am. Compl.," ECF Doc. # 15) asserts claims under

a number of legal theories, the principal issue at play is whether the one-year contract term was

extended beyond May 6, 2010, as the Trustee alleges, with the effect of also extending the one-

year tail period; or, alternatively, whether a "definitive agreement" for the May 9, 2012 financing

transaction was actually reached before the initial tail period expired on May 6, 2012.

For the following reasons, the Court **GRANTS** the Motion in part and **DENIES** the

Motion in part. Specifically, the motion to dismiss Count I (Turnover) is **GRANTED**, and

Count I is **DISMISSED WITH PREJUDICE**. The motion to dismiss Count II (Breach of

Contract) is **GRANTED IN PART AND DENIED IN PART**, with leave to amend. The

motion to dismiss Count III (Breach of Implied-In-Fact Contract) is **DENIED**.  The motion to

dismiss Counts IV (Breach of Contract (Substantial Performance)) and V (Unjust Enrichment) is

**DENIED**.  The motion to dismiss Counts VI (Constructive Fraudulent Conveyance) and VII

(Actual Fraudulent Conveyance) is **GRANTED WITH PREJUDICE**.  The motion to dismiss

Count VIII (Attorneys' Fees) is **DENIED.**

## I.    BACKGROUND

On December 29, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 7 of the Bankruptcy Code.  Madison Williams was a New York limited

liability company with principal places of business in New York and Texas.  It was a licensed

broker-dealer and operated as a boutique integrated capital markets and investment banking firm,

serving clients as a financial advisor and/or placement agent.  (Am. Compl. ¶¶ 9, 12, 13.)  TXON

is a Delaware limited liability company with a principal place of business in Texas.  (*Id.* ¶ 10.)

### A.    The Contract

On May 6, 2010, TXON and Madison Williams entered into the Contract, under which

Madison Williams served as TXON's exclusive financial advisor, responsible for advising,

consulting with, and assisting TXON in identifying, evaluating, and executing one or more

"Transactions."[1]  (Contract at 1.)  Madison Williams was to assist TXON by (1) familiarizing

itself with TXON's businesses; (2) identifying and evaluating various strategic alternatives;

(3) assessing the viability of various equity and debt issuance; (4) advising on the capital

placement process; (5) conducting an examination of TXON; (6) performing a financial analysis

---

[1]      "Transaction" is defined in the Contract as a "financial transaction involving the purchase of equity or
similar securities by one or more potential investors in the Company [TXON] ('Investors'), and/or a sale transaction
of a substantial portion of the assets or equity interests in the Company to one or more potential buyers (the
'Buyers').  As used in this Agreement, the term 'Transaction' also includes any merger, consolidation,
reorganization or other business combination pursuant to which the Company or a substantial portion of its assets
are combined with that of a Buyer or an Investor in one transaction or a series of transactions."  (Contract at 1.)

of TXON; (7) developing financial projections for TXON; (8) developing presentations to be made to potential investors and buyers; and (9) evaluating and recommending financial terms with respect to the Transactions (collectively, the "TXON Services").  (*Id.*)

TXON agreed to pay Madison Williams a number of fees, including (1) an "initial fee of $50,000 . . . due and payable in cash upon execution of this Agreement and . . . [to] be applied to any Transaction Fee" (the "Engagement Fee") (*id.* § 2(a)); (2) a "Transaction Fee" of

> (i)    In the case of a Transaction with a Buyer, a fee of 5% of the Transaction Amount as hereinafter defined, subject to a minimum fee of $500,000, payable in cash promptly upon closing of a Transaction during the Term of Engagement . . . or during the 12-month period following termination of this Agreement, and

> (ii)    In the case of a Transaction with an Investor, a fee of 5% of the Committed Capital paid or received in a Transaction, subject to a minimum fee of $500,000, payable in cash promptly upon closing of a Transaction during the Term of Engagement . . . or during the 12-month period following termination of this Agreement.

(*id.* § 2(b)); and (3) a "Warrant Fee," entitling Madison Williams to buy shares of TXON's common stock or equivalent equity ownership under certain terms (collectively, the "Fees") (*id.* § 2(c)).

The Contract defines the "Term of Engagement" as follows:

> Madison Williams' engagement will commence on the date hereof and will continue for a period of twelve (12) months after the date hereof, **unless extended by mutual written consent** or earlier terminated as provided below. . . . It is also expressly agreed that, if any Transaction is consummated within 12 months after termination of this Agreement, or if a definitive agreement that results in a Transaction is entered into during the term of this Agreement or within such 12-month period, Madison Williams shall be entitled to its full fees as described above.

(*Id.* § 4 (emphasis added).)  The engagement commenced on May 6, 2010; absent any extension, the engagement would have terminated on May 6, 2011 (the "Initial Term").  Under the Contract, Madison Williams was entitled to Fees accrued during the Initial Term or related to "a

4

definitive agreement that result[ed] in a Transaction . . . entered into" during the 12 months

following the expiration or termination of the engagement—i.e., through May 6, 2012 (the

"Initial Tail Period").  (*Id.*)

> **B.**     **The Closed Deal and the Amended Complaint**

On May 9, 2012, TXON successfully closed a transaction that raised an undisclosed

amount in new equity and debt and resulted in the formation of a new entity, TXON Partners

LLC (the "Closed Deal").  (Am. Compl. ¶ 49.)  The Plaintiff alleges that a "definitive

agreement" to close that deal was "reached" before the Initial Tail Period's expiration on May 6,

2012.  (*Id.* ¶ 50.)  Since the Closed Deal is a "Transaction" within the meaning of the Contract,

the Trustee argues that the Debtor is entitled to Transaction Fees and Warrant Fees as provided

in the Contract.  (*Id.* ¶¶ 50, 53–54.)

The Trustee additionally alleges that, "on or around May 6, 2011," Madison Williams

and TXON agreed to extend the Initial Term through "approximately October 17, 2011." (the

"Extended Contract").  (*Id.* ¶¶ 26–28.)  Accordingly, following the original end date for the

engagement on May 6, 2011, Madison Williams "continued to provide extensive services to

TXON to facilitate the consummation of the TXON Deal," including corresponding with

potential transaction counterparties, attending meetings with potential counterparties, and

drafting documents for a potential transaction.  (*Id.* ¶ 27.)  The Plaintiff argues that the Debtor is

entitled to Transaction Fees and Warrant Fees stemming from the Closed Deal because Madison

Williams' continued work extended the Contract and  pushed the tail period through October 17,

2012 (the "Extended Tail Period").

On October 17, 2011, TXON terminated the engagement by sending an e-mail to

Madison Williams (the "October 17, 2011 E-mail," ECF Doc. # 14-1). [2] TXON's CEO sent that

e-mail to Madison Williams, stating:

> It's with regret that I must cancel the TXON agreement with Madison
> Williams, effective immediately, given the fact that Madison Williams
> cannot conduct its business.  Please consider all aspects of the contract
> terminated, and that there are no future obligations of either party to the
> other.
>
> TXON is appreciative of the efforts put in by Madison Williams on our
> behalf, and we wish your personnel success in their future endeavors.

(October 17, 2011 E-mail.)

The Amended Complaint alleges eight causes of action:  (1) turnover of fees associated

with the Closed Deal as property of the estate pursuant to Bankruptcy Code sections 541 and

542; (2) breach of contract for failure to pay fees for the "definitive agreement" "reached" during

the Initial Tail Period or, alternatively, for the Transaction consummated during the Extended

Tail Period; (3) breach of common law contract under Texas law based upon the Extended

Contract, as defined by the Parties' course of dealing; (4) breach of contract under a theory of

substantial performance; (5) unjust enrichment; (6) fraudulent transfer of rights to the Contract

and associated fees to TXON under section 548(a)(1)(B) of the Bankruptcy Code; (7) fraudulent

conveyance under section 548(a)(1)(A) of the Bankruptcy Code related to the rights transfer to

TXON; and (8) attorneys' fees.

---

[2]    The Plaintiff's counsel filed the October 17, 2011 E-mail on ECF after the March 24, 2014 hearing at the
Court's request.  Since the October 17, 2011 E-mail is incorporated by reference in the Amended Complaint, the
Court may consider it in connection with the Motion to dismiss.  *See Blue Tree Hotels Inv. (Canada), Ltd. v.
Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

## II.    DISCUSSION

### A.    Standard Governing Motion to Dismiss

To survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), made applicable here by FED. R. BANK. P. 7012, "a complaint must set out only enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss. *McHale v. Citibank, N.A. (In re the 1031 Tax Group, LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009).[3] First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678).[4] Second, the Court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

---

[3]    *See also Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732 (DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (Chin, J.) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Emp'rs Health and Welfare Fund v. Pfizer, Inc.*, No. 08 CV 5175 (KMW), 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, No. 08 Civ. 6195 (PKC), 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same).

[4]    *See also Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (stating that the court must "accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally") (quoting *Gregory v. Daly*,

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool*, 520 F.3d at 183 (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *Blue Tree Hotels*, 369 F.3d at 217 (citation omitted); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

When dismissing complaints for failure to comply with the Federal Rules of Civil Procedure, courts often grant leave to amend. Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Leave to amend is proper "where the moving party has not been guilty of bad faith and is not acting for the purpose of

---

243 F.3d 687, 691 (2d Cir. 2001)); *Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir. 2008) ("In reviewing a motion to dismiss, we accept the allegations in the complaint as true.") (citation omitted); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, bald assertions and conclusions of law will not suffice.") (internal quotation marks omitted).

delay, the opposing party will not be unduly prejudiced, and the trial of issues will not be unduly

delay." 3 MOORE'S FEDERAL PRACTICE § 1508[2].

### B.    Count I:  Turnover

In Count I, the Plaintiff alleges a right to payment of the Transaction and Warrant Fees

under Bankruptcy Code sections 541 and 542.  The turnover claim, however, ignores "the well-

settled law in this district that § 542(b) cannot be used to recover a disputed pre-petition debt."

*In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005); *see also Calka v. Chuu*, No. 02

Civ. 9769 (JSR), 2003 U.S. Dist. LEXIS 4090, at *4 (S.D.N.Y. Mar. 19, 2003) (stating that

"section 542(b) only applies to undisputed, liquidated claims"); *Hirsch v. London S.S. Owners'*

*Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996)

(Sotomayor, J.) ("It is settled law that the debtor cannot use the turnover provisions to liquidate

contract disputes or otherwise demand assets whose title is in dispute.") (quoting *United States v.*

*Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991).

Here, the Defendant disputes the Plaintiff's right to recover damages under the Contract;

no undisputed receivable remains unpaid.  The Plaintiff cannot use the turnover provisions of the

Bankruptcy Code to recover a disputed prepetition debt, and Count I of the Amended Complaint

is therefore **DISMISSED WITH PREJUDICE**.

### C.    Count II:  Breach of Contract

Count II of the Amended Complaint alleges that the Defendant breached the Contract by

failing to pay the Fees stemming from the Closed Deal.  The Plaintiff advances two theories in

support of his contentions that the estate is entitled to Fees:  (1) the Parties extended the Initial

Term until October 17, 2011 and the Closed Deal was therefore consummated within the

Extended Tail Period, and, in the alternative, (2) a definitive agreement in connection with the

Closed Deal was reached before the termination of the Initial Tail Period.  As explained below,

the Motion is granted with leave to amend with respect to the first theory, and it is denied with

respect to the second theory.

The Contract is governed by Texas law.  (Am. Compl. ¶ 75.)  There are four elements of

a breach of contract claim under Texas law:  (1) the existence of a valid contract;

(2) performance or tendered performance by the plaintiff; (3) the defendant's breach of the

contract; and (4) resulting damages to the plaintiff.  *See Mullins v. TestAmerica, Inc.*, 564 F.3d

386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005));

*Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. &*

*Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)); *Rice v. Metro. Life*

*Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App. 2010).

The Defendant does not contest the validity of the Contract, according to its original

terms.  Instead, the Defendant argues that (1) the Plaintiff has not adequately pled that the

Contract was validly extended and, because the Closed Deal occurred after the termination of the

Initial Tail Period, the terms of the Contract do not cover the Closed Deal; and (2) to the extent

that the Plaintiff bases the breach of contract action on the allegation that a "definitive

agreement" between the parties had been reached before May 6, 2012—the end of the Initial Tail

Period—this is not "well-pleaded" considering that an examination pursuant to Federal Rule of

Bankruptcy Procedure 2004 preceded the Amended Complaint.  The Court addresses both

arguments in turn.

> 1.    *The Plaintiff Has Not Sufficiently Pled the Existence of a Written
>        Extension*

The Plaintiff alleges that, "[u]pon information and belief, on or around May 6, 2011, the

TXON Engagement and the terms of the [Contract] were extended by the parties."  (Am. Compl.

¶ 26.)  During the time between May 6, 2011, and the Debtor's receipt of the October 17, 2011

E-mail canceling the Contract, the Debtor continued to perform services to TXON, including

corresponding and meeting with potential counterparties and drafting potential transaction

documents.  (*Id.* ¶ 27.)

The Defendant challenges the Plaintiff's description of the purported Extended Contract

because (1) the Plaintiff failed to plead that the alleged extension was in writing and signed by

the Parties, which the Contract required as a condition precedent to any extension, and (2) the

Parties' agreement contained a "no oral modification clause," so any alleged oral modification

would therefore be impermissible.  Consequently, the Defendant argues, the Plaintiff has failed

to plead that a valid extension exists, and any cause of action based on the May 9, 2012

transaction must be dismissed pursuant to Rule 12(b)(6).

The Contract provides that the Initial Tail Period would expire on May 6, 2012, "unless

extended by mutual written consent or earlier terminated . . . by giving written 30 days prior

notice to the other party."  (Contract § 4.)  The Contract does not define the phrase "mutual

written consent."  The Contract further provides that it "may not be amended or modified except

in a writing executed by [TXON] and Madison Williams."  (*Id.* § 10(c).)  Like "mutual written

consent," the Contract does not define an "executed" writing.

The Defendant argues that an instrument in writing, signed by the Parties, is a condition

precedent to any extension due to the "mutual written consent" requirement.  In Texas, "the

question of whether a written contract must be signed to be binding is a question of the parties'

intent."  *Bilello*, 414 S.W.3d at 215 (quoting *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex.

App. 2004)) (internal quotation marks omitted).  Texas courts focus on the parties' conduct to

determine their intent.  "Therefore, [the question of the parties' intent] is generally a question of

fact for the fact finder to answer." *Bunzl*, 155 S.W.3d at 210; *see also Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir. 1996). In *Bilello*, "the evidence [indicated] that both parties viewed signatures as a condition precedent to a new binding agreement . . . ." *Bilello*, 414 S.W.3d at 215. The parties entered into an agreement requiring modifications or amendments to be in writing signed by all the parties. 414 S.W.3d at 215. Even so, the court considered other evidence to determine whether the signed writing was actually a condition precedent, including examining the parties' e-mails.

Though the Plaintiff pleads that the Contract "[was] extended," the Plaintiff does not allege that the extension was in writing. (*See* Am. Compl. ¶ 26.) To the extent the Amended Complaint alleges any written communication between TXON and the Debtor, it is limited to the Debtor's continued "correspond[ence] with [TXON]" after May 6, 2011. (*Id.* ¶ 80.) But the Contract clearly requires that any extension be memorialized by "mutual written consent," and the Plaintiff has not alleged any such writing.

At the March 24, 2014 hearing, the Plaintiff's counsel indicated e-mails in his possession—sent by TXON directing Madison Williams to perform certain services after the original May 6, 2011 expiration of the Contract—would support a finding that there was a written extension. The Court cannot determine whether these e-mails—not currently before the Court—would be sufficient under Texas law to qualify as "mutual written consent." The Amended Complaint alleges that TXON and the Debtor "continued to correspond . . . as if the terms of the [Contract] were extended," and, in certain instances, TXON "directed the Debtor to correspond with potential-counterparties." (Am. Compl. ¶¶ 80, 83.) These allegations are insufficient to allege "mutual written consent" to extend the Contract.

To the extent the Amended Complaint pleads a cause of action for contract damages resulting from an extended contract—based on a written agreement between the parties extending the term—that portion of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE.**   But the Plaintiff is granted leave to amend.[5]

> 2.    *The Plaintiff Has Adequately Pled that a "Definitive Agreement" Was Reached During the Initial Tail Period*

On the other hand, the Amended Complaint adequately alleges that, even if no valid written extension of the Contract exists, the Closed Deal was "definitively" agreed to before the May 6, 2012 termination of the Initial Tail Period.  According to the Amended Complaint, the Closed Deal was the culmination of a Transaction between (1) TXON, (2) a third-party secured debt and equity investor, and (3) a third-party debt investor, all three combining to form TXON Partners LLC.  (Am. Compl. ¶ 49.)  The Closed Deal occurred "on or around May 9, 2012," three days after the termination of the Initial Tail Period.

Even the Defendant concedes that "under normal circumstances, the mere pleading that a 'definitive agreement' had been entered into within the original [tail period] would be sufficient to survive a motion to dismiss . . . ."  (Reply at 8.)  But due to the "extensive pre-action discovery," including Rule 2004 examination of the Defendant's principal and document production, the Defendant argues that the Court "should . . . require [the Plaintiff] to provide at least some level of detail in order to subject Defendant to the ongoing expense, effort and inconvenience of continuing to defend" itself.  (*Id.*)

---

[5]    The Plaintiff alleges possession of e-mails "dated after the Initial Term sent by the Defendant to the Debtor explicitly directing the Debtor to perform the TXON Services."  (Opp. at 17 n.5.)  Signed e-mail communications are sufficient under Texas law to establish a signed writing to satisfy the statute of frauds.  *See* Tex. Bus. & Com. Code § 322.007; *Bocchi Ams. Assocs. v. Commerce Fresh Mktg., Inc.*, 515 F.3d 383, 391–92 (5th Cir. 2008).  As the Amended Complaint currently stands, though, none of the references to communications between the Debtor and the Defendant are sufficient, under Texas law, to satisfy the Statute of Frauds, absent the "partial performance" exception (see below for further discussion of the Texas Statute of Frauds).

Failing to plead additional facts following pre-action discovery that would not otherwise be required to sustain the complaint is not a basis to grant a motion to dismiss. In *Wilder v. Bernstein*, 499 F. Supp. 980 (S.D.N.Y. 1980), the court considered a motion to dismiss a successor-in-interest claim where the plaintiffs had taken extensive pre-action discovery. The court stated that "the purpose of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support (of it.)'" *Id.* at 989 (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). The court found

> no merit to defendants' intimation that insofar as the instant action is a successor to *Wilder I* [a previous lawsuit] and plaintiffs have had extensive discovery of the facts underlying the claims asserted in that action and reasserted here they should have availed themselves of these facts and refined their complaint allegations.

*Id.* at n.14. The Defendant has cited no authority for its contention that the Trustee's Rule 2004 discovery in this adversary proceeding alters the Rule 12(b)(6) analysis.

Moreover, the Defendant's contention that Madison Williams did not perform services related to the Closed Deal for which it seeks fees (Reply at 2–3) is unpersuasive. The Defendant argues that the Debtor is not entitled to any Fees related to the Closed Deal because it failed to perform an obligation under the terms of the Contract and that, "***[i]n fact, Plaintiff's pleadings conclusively establish that Madison Williams filed this bankruptcy on December 29, 2011, and ceased operations six months before the 'Closed Deal' occurred.***" (*Id.* at 3 (emphasis in original).) Under the plain language of the Contract, however, Madison Williams was not required to perform any services during the Tail Period. The Plaintiff does not allege that Madison Williams conducted any services after receiving the October 17, 2011 termination e-mail from the Defendant—two months before filing its bankruptcy petition and almost seven months before the Closed Deal occurred. If, as the Plaintiff alleges (and the Court accepts as

true for the purposes of this Motion), a definitive agreement was reached during the Initial Tail

Period, the Contract requires TXON to pay Madison Williams regardless of the extent of

Madison Williams' involvement in the deal.

Accepting the Plaintiff's allegations in the Amended Complaint as true, the Plaintiff pled

sufficient facts to infer that a definitive agreement was entered into before the expiration of the

Initial Tail Period.  Therefore, the Trustee may seek damages for breach of contract even absent

an extension of the Contract.  Therefore, the Motion to dismiss this portion of the claim is

**DENIED**.

### D.    Count III:  Breach of Common Law Contract

Count III alleges that, "[t]o the extent it is determined that the Debtor and TXON did not

expressly agree to the Extension, the terms of the [Contract] were extended by the course of

dealing between the parties."  (Am. Compl. ¶ 74.)  The Defendant argues that the Texas statute

of frauds (the "Statute of Frauds") bars allegations by the Plaintiff that the Contract was

impliedly extended by the Parties' course of conduct.  (Motion at 11.)  Since the Contract

provides that any extension must be in writing, and the agreement further contains a "no oral

modification clause," the Defendant contends that the Plaintiff failed to plead a valid extension.

The Plaintiff, on the other hand, argues that the Amended Complaint has sufficiently pled facts

that would satisfy the "partial performance" exception to the Statute of Frauds and that a writing

is unnecessary.

### 1.    *The Plaintiff Has Adequately Pled that an Implied-in-Fact Extended Contract Existed Under Texas Law*

Under Texas law, a contract can be express or implied by the parties' course of conduct.

An implied-in-fact contract exists where the parties' conduct indicates a mutual intention to

contract, even absent a writing (e.g., accepting services where the other party would ordinarily

expect to be paid regardless of a signed writing).  *See Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 298 (Tex. 1981).

 "An extension of time for performance may be implied as well as express."  *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 846 (Tex. App. 194) (citation omitted).  If the parties do not define the extension of time, "the law will imply a reasonable time."  *Cotton v. Deasey*, 766 S.W.2d 874, 877 (Tex. App. 1989) (citations omitted).

But Texas appellate courts differ on what terms should control a contract that was impliedly extended.  Under one line of cases, an extension does not alter any other provisions of the contract.  *See id.*  Thus, *Cotton* and other similar Texas appellate cases consider an implied extension of time to perform a contract as an implied extension of the original terms of the contract.  But a contrary line of Texas Appellate cases disagrees, holding instead that an implied contract gives rise to rights under the new, implied contract.  Under this line of cases, after the expiration of the express contract, the rights of the parties under the new contract are to be determined under implied contract principles, which is a question of fact.  *See Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487 (Tex. App. 1984) (observing that, when a contract is implied in fact, the law finds a mutual intent to contract from the facts and circumstances of the case).  Whether mutual intent exists is a question of fact.  *Id.*  In situations similar to this case, the analysis is more difficult:

> [t]he situation becomes more complex when parties initially operate under an express contract, but continue to operate in essentially the same manner after the express contract has expired. Although there is scant Texas law on the problem, other jurisdictions have held that, after expiration of the express contract, the rights of the parties are to be determined under implied contract principles.  Although their conduct may permit a finding that the parties have impliedly agreed that their rights should continue to be measured by the old contract, those rights arise from the new implied contract, not the old expired contract.

16

*Id.* (citations omitted).

The Plaintiff relies on *Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.*, 6 S.W.3d 340 (Tex. App. 2001) and *Alcoa v. Hydrochem Indus. Servs., Inc.*, 2005 Tex. App. LEXIS 2010 (Tex. App. 2005), for the proposition "that the continued performance by both parties under [a contract] impliedly extend[s] the time for performance and all attending provisions." *Hydrochem*, 2005 Tex. App. LEXIS 2010, at *5 (citing *Sieber*, 66 S.W.3d at 344–47). In *Sieber*, the court found that an indemnity provision of a contract continued to be in effect after both parties to the contract performed under the contract following the express date of termination. *Sieber*, 66 S.W.3d at 347. Similarly, in *Hydrochem*, the Texas Court of Appeals held that continued performance under the contract at issue impliedly extended the time of performance and all attending provisions. *Hydrochem*, 2005 Tex. App. LEXIS 2010 at *3.

The Amended Complaint alleges that the Parties corresponded on multiple occasions after the conclusion of the initial term of the contract and that Madison Williams continued to operate under the terms of the contract, providing services to the Defendant. (Am. Compl. ¶¶ 27, 78–84.) Specifically, the Plaintiff alleges that after the initial expiration date, "the Debtor continued to provide extensive services to TXON to facilitate the consummation of [a Transaction] . . . ." (*Id.* ¶¶ 27, 82.) Additionally, "[a]fter the Extension, TXON continued to correspond with the Debtor as if the terms of the [Contract] were extended by the Parties." (*Id.* ¶ 80.) "TXON knew that the Debtor was providing such services and, in several instances, directed the Debtor to correspond with potential counter-parties." (*Id.* ¶ 83.) "TXON never objected to the Debtor providing the TXON Services after the Extension." (*Id.* ¶ 84.) Additionally, the Defendant sent e-mail notice of the termination of the Debtor's engagement on October 17, 2011, implying that it believed that the Contract was still in force. (*Id.* ¶¶ 28, 65, 85,

17

104; October 17, 2011 E-mail.)  These allegations support the Plaintiff's argument that the Parties continued to behave as if the Contract had been extended, even without an express written extension of the Contract.  The allegations are sufficient to allege, at this stage, that an implied-in-fact contract existed.

Whether the implied contract would extend all of the terms of the original contract and would therefore cover the Extended Tail Period or would operate as an entirely new contract remains to be seen; this is a question of fact that will depend on the evidence produced by the Plaintiff.  This is not the proper time to make those determinations.

> 2.    *The Plaintiff Has Adequately Pled that the Implied-in-Fact Extended Contract Satisfies the Statute of Frauds Exception for Part Performance*

Under Texas law, statutes of frauds are considered "substantive," so Texas law applies to this issue.  *Lehman v. Dow Jones & Co., Inc.*, 606 F. Supp. 1152, 1156 (S.D.N.Y. 1985), *aff'd in part, rev'd in part*, 783 F.2d 285 (2d Cir. 1986) (citing *Byrd v. Blue Ridge Rural Elec. Co.*, 356 U.S. 525 (1958)).  Section 26.01 of the Texas Business and Commerce Code states:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> > (1) in writing; and
> >
> > (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
>
> (b) Subsection (a) of this section applies to:
>
> . . .
>
> > (6) an agreement which is not to be performed within one year from the date of making the agreement . . . .

TEX. BUS. & COM. CODE ANN. § 26.01 (West 2009).

18

The Statute of Frauds governs contracts for performance that are intended to span a period of more than one year, even if the contracts may be terminated within one year upon the happening of some event other than completed performance. *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 164 (Tex. App. 2011). But "where the time for performance is indefinite in that the agreement merely provides for the performance of a particular act or acts which can conceivably be performed within one year, the Statute of Frauds is inapplicable, however improbable performance within one year might be." *Hondo Oil and Gas Co. v. Texas Crude Operator*, 970 F.2d 1433, 1438 (5th Cir. 1992).

"In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed." *Kalmus v. Oliver*, 390 S.W.3d 586, 590 (Tex. App. 2012) (citing Tex. Bus. & Com. Code Ann.§ 26.01(b)(6); *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App. 1996)). If there is a year or more between the reference points, a writing is required to render the agreement enforceable. *Id.* (citing *Young*, 917 S.W.2d at 508).

The Defendant argues that a writing was required to render the agreement enforceable because the difference between May 6, 2011, when the parties allegedly extended the Contract, and October 17, 2012, when the extended tail period allegedly ended, was greater than one year. Since the Amended Complaint does not contain any allegations of a written agreement, the Defendant argues, any of the Plaintiff's claims based upon an alleged contract extension are barred by the Statute of Frauds. But the Plaintiff argues that the "one year" requirement is inapplicable because the particular acts *could* have been performed any time within one year. "Once that Transaction was consummated and the Debtor was paid its fee, the performance under the [Contract] would be complete." (Opp. at 17.)

Despite the Plaintiff's contention, the plain terms of the Contract do not anticipate a *single* transaction but instead allow for *multiple* transactions.  (*See* Contract § 2(b) (defining multiple instances when Madison Williams could be entitled to a transaction fee).)  Additionally, the Defendant points to *Mann v. NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex. App. 1993), which held that "[a]n agreement that fixes a definite time period longer than a year during which performance shall continue indicates that the parties did not contemplate earlier performance." *See also Walker v. Tafralian*, 107 S.W.3d 665, 669 (Tex. App. 2003) (agreement with express two year term fell within the statute of frauds).  The existence of a year-long tail period further supports the Defendant's point:  since multiple transactions are contemplated by the Contract, the Defendant's ongoing obligation to pay would last at least one year from the end of the time that Madison Williams was required to provide services under the Contract, and longer in the event a "definitive agreement" was reached during the tail period  Therefore, in order for the implied-in-fact contract to be enforceable, the Plaintiff is required to satisfy the Statute of Frauds by pleading that a writing exists.  Alternatively, the Plaintiff must show that an exception to the Statute applies.

The Plaintiff does not plead the existence of a writing, but argues instead that the Amended Complaint sufficiently pleads allegations that satisfy the "partial performance" exception to the Statute of Frauds.  Under the partial performance exception, contracts that have been partly performed, but do not meet the requirements of the Statute of Frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App. 1985).  "Where one party fully performs a contract, the Statute of Frauds is unavailable to the other party who knowingly accepts benefits and partly performs." *Hydrochem*, 2005 Tex. App. LEXIS 2010 at *12 (citing *Avila v. Gonzalez*, 974

S.W.2d 237, 24 (Tex. App. 1998); *626 Joint Venture v. Spinks*, 873 S.W.2d 73, 76 (Tex. App.

1993); *Estate of Kaiser v. Gifford*, 692 S.W.2d 525, 526 (Tex. App. 1985); *Oak Cliff Realty

Corp. v. Mauzy*, 354 S.W.2d 693, 695 (Tex. Civ. App. 1962); *Wingart v. Baxter*, 30 S.W.2d 522,

527 (Tex. Civ. App. 1930)).

The partial performance must be "unequivocally referable to the agreement and

corroborative of the fact that a contract actually was made." *Wiley v. Bertelsen*, 770 S.W.2d 878,

882 (Tex. App. 1989) (citing *Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533–34 (Tex. 1948)).

The acts of performance relied upon to take an oral contract out of the Statute of Frauds must

have been undertaken with no other possible design than to fulfill the particular agreement to be

enforced; otherwise, the acts do not tend to prove the existence of the oral agreement relied upon

by the plaintiff. *Teague v. Roper*, 526 S.W.2d 291, 293 (Tex. Civ. App. 1975 ) (citing *Francis v.

Thomas*, 106 S.W.2d 257, 260 (Tex. 1937)).

The Plaintiff has sufficiently pled facts that would indicate that the "partial performance"

exception applies.  In the Amended Complaint, the Plaintiff alleges that Madison Williams

continued to provide services consistent with the Contract and that the Defendant terminated the

contract by sending notice via e-mail on October 17, 2011 (*id.* ¶¶ 27–28).  Additionally, TXON

"continued to correspond with the Debtor [after the Extension] as if the terms of the [Contract]

were extended by the Parties."  (*Id.* ¶ 80.)  "TXON knew that the Debtor was providing such

services and, in several instances, directed the Debtor to correspond with potential counter-

parties."  (*Id.* ¶ 83.)  These allegations are sufficient, at this stage, to infer that Madison Williams

performed in the manner contemplated under the Contract and that TXON knowingly accepted

the benefits of Madison Williams' actions and partially performed, by directing the Debtor to

take particular actions.

TXON argues that even during the tail period, Madison Williams "had the same right to bring a potential transaction to TXON as it had during the original term, so any activity by the Debtor during the unextended tail period is at least as referable to its rights under the original contract as to any purported oral extension . . . ." (Motion at 12.)  But, as noted above, Madison Williams was not required to take *any* action during the Tail Period to be entitled to Fees resulting from a Transaction consummated or definitively agreed to during that period. According to the plain terms of the contract, the Tail Period begins upon termination of the Engagement; no work is contemplated to be completed during the Tail Period.  Whether the actions taken by Madison Williams are "unequivocally referable" to the implied-in-fact contract requires further factual analysis and dismissing Count III on these grounds is not appropriate at the motion to dismiss stage.

Consequently, the Motion to dismiss Count III is **DENIED**.

### E.    Count IV and V:  Substantial Performance and Unjust Enrichment

In Counts IV and V, the Plaintiff alleges that the Debtor is entitled to recover damages for breach of contract based upon theories of substantial performance  and unjust enrichment. These Counts of the Amended Complaint rest upon a theory of *quantum meruit*.  Under Texas law,

> [t]he right to recover on quantum meruit is maintainable where there has been a partial performance of the contract.  This right does not grow out of the contract, but is independent of it.  The basis of recovery is founded on the theory that where an owner was benefitted by such part performance, it would be inequitable for the owner to refuse to pay for what he has received. . . .  The right to recover on a quantum meruit is not based on the contract, but upon an implied agreement by the owner to pay for the benefits received."

*Ryan v. Thurmond*, 481 S.W.2d 199, 204 (Tex. Civ. App. 1972) (citations omitted).  However, "[w]here the parties have a written contract and the contractor has not completed the work or

does not comply with the terms of the contract, recovery on quantum meruit is not applicable."

*Id.* (citing *Simons v. Paine*, 140 S.W. 855 (Tex. Civ. App. 1911)).

> When ruling on *quantum meruit*, Texas courts consider whether:
>
> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged.

*Wood v. Tex. Farmers Ins. Co.*, 593 S.W.2d 777, 780 (Tex. Civ. App. 1979) (citations omitted). If an express contract sets out all the obligations of the parties, an action in *quantum meruit* is not available. *Id.* On the other hand, recovery under *quantum meruit* is available even though an express contract exists between the parties where the action involves obligations outside the scope of the express contract. *Id.* at 781.

The violation of the Statute of Frauds does not limit the Plaintiff's ability to recover under *quantum meruit* theories: "the Texas courts afford recovery in quantum meruit as an alternative remedy for breach of promises rendered unenforceable by the statute of frauds." *Pravel, Wilson & Matthews v. Voss*, 471 F.2d 1186, 1189 (5th Cir. 1973) (citing *Scott v. Walker*, 170 S.W.2d 718 (Tex. Comm. App. 1943); *Miller v. Graves*, 185 S.W. 2d 745 (Tex. Civ. App. 1945)).

At this stage, the Plaintiff has alleged all of the elements of *quantum meruit* under Texas law in the Amended Complaint: (1) Madison Williams continued to perform services for the Defendant after May 6, 2011 (*see* Am. Compl. ¶¶ 27, 79, 82); (2) the services were provided to TXON, and the Plaintiff seeks recovery from TXON (*id.*); (3) TXON accepted and benefitted from the services provided by Madison Williams (*id.* ¶¶ 81, 83–84); and (4) the Defendant knew that Madison Williams expected to be paid for such services (*id.* ¶¶ 80–87).

To the extent that the Defendant argues that TXON did not expect to pay Madison Williams, that is a question for a later stage. Additionally, whether the Plaintiff will be able to recover the damages sought—i.e., the Fees Madison Williams was purportedly entitled to under the Contract—is also a question inappropriate for a motion to dismiss. Whether the Plaintiff will be able to show that Madison Williams provided services *directly related* to the Closed Deal is unclear at best. But the Plaintiff has alleged facts sufficient to support a cause of action for *quantum meruit*; how much he may be entitled to collect in damages, assuming he is able to prove his claims, is another matter. The motion to dismiss Counts IV and V is therefore **DENIED**.

### F.    Counts VI and VII:  Constructive and Actual Fraudulent Transfer

In Counts VI and VII, the Plaintiff essentially tries to convert a garden-variety breach of contract case (or one based on theories of quasi-contract) into a case with fraudulent transfer claims. No actual "transfers" by Madison Williams are alleged, and the Plaintiff's theory cannot pass the *Iqbal* plausibility standard in asserting the fraudulent transfer claims. Both claims are premised on the allegation that on "October 17, 2011, less than two years before the Filing Date, the Debtor transferred or assigned its rights to the [Contract], the TXON Transaction Fees, and/or the TXON Warrant Fees to TXON." (Am. Compl. ¶ 119.) But the only thing alleged in the Amended Complaint that occurred on October 17, 2011 was an e-mail from TXON to Madison Williams terminating the Contract; no actions or transfers by Madison Williams are alleged. But the Plaintiff does not assert a plausible argument that the October 17, 2011 E-mail transferred anything. Indeed, the Plaintiff argues that the October 17, 2011 E-mail serves the opposite effect, granting the Debtor continued rights to fees through October 17, 2012.

24

Counts VI and VII are unsupported by any plausible allegations and must be

**DISMISSED WITH PREJUDICE**.

### G.    Count VIII:  Attorneys' Fees

Count VIII of the Amended Complaint demands attorneys' fees and costs associated with

the Adversary Proceeding.  Under the Contract, "[i]f it becomes necessary for one party to

institute legal proceedings against the other party to enforce this Agreement, the prevailing party

is entitled to recover, from the losing party, its legal fees, expert witness costs, and other

expenses incurred in connection with such proceeding."  (Contract § 10.)

Since the Plaintiff still has causes of action outstanding against the Defendant, the Motion

to dismiss Count VIII is **DENIED**.

### III.    CONCLUSION

For the reasons stated above, the Defendant's Motion is **GRANTED IN PART AND**

**DENIED IN PART** as provided above.  The Plaintiff is granted to leave to amend Count II

within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

Dated:  May 14, 2014
        New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge